27 C.C.P.A.(Patents)

**MILLS v. HERSHMAN.**
**Patent Appeal No. 4196.**

Court of Customs and Patent Appeals.

Jan. 4, 1940.

· Otto R. Barnett and Lawrence T. Barnett, both of Chicago, Ill., for appellant.

Verne A. Trask, of Indianapolis, Ind., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the invention defined in the single count in issue to appellee, Okla H. Hershman.

The count reads: "A reflector button assembly comprising a plurality of reflector button housings, oppositely disposed laterally extending ear portions on each housing, means joining said housings together through said ear portions and reflector buttons positioned within said housings and partially exposed."

The interference is between appellant's application, serial No. 68,821, filed March 14, 1936, and appellee's application, serial No. 719,815, filed April 10, 1934.

Appellant is the junior party and the burden was upon him to establish priority of invention by a preponderance of the evidence.

The cause was submitted to the tribunals of the Patent Office on a motion by appellant to dissolve the interference on the ground that appellee was not entitled to make the claim constituting the count in issue, and upon evidence submitted by the parties relative to their conception of the invention and their reduction of it to practice.

The tribunals of the Patent Office concurred' in holding that appellee's application disclosed the invention defined in the count in issue and that, in view of the evidence of record, appellee was entitled to an award of priority.

· On November 2, 1939, counsel for appellant filed in this court a "statement limiting scope of review," wherein it was stated that—

"Mills [appellant] concedes that while the evidence shows Mills to be the first to conceive, *it does not show diligence by Mills*, within the decisions of this Court, before Hershman entered the field.

*"Mills' sole contention relied on in this Court is that Hershman is not entitled to an award of priority because he does not disclose the subject matter of the sole count involved.*

"Therefore the only question which Mills asks the Court to adjudicate is the right of Hershman to make the count and requests that the Court's consideration be so limited to that question, as is fully covered in the respective briefs." (Italics ours.)

The cause was submitted to this court on the briefs of counsel for the parties.

The sole issue before us is whether appellee is entitled to make the claim constituting the count in issue.

Relative to that issue, the Board of Appeals, in its decision, said: "The question of the right of Hershman to make the count we believe was properly decided by the examiner. We note that in Hershman's Figs. 11 and 13 the plurality of reflector button housings are provided with laterally extending 'members which are joined together and the reflector buttons are positioned within said housings. Appellant urges that there are no ear portions provided on the housings of Hershman. We are not in agreement with that contention inasmuch as the claim does not call for integral ear portions on the housings and the links connecting the housing in these figures might well be held to be ear portions which join the housings together. The holding that Hershman can make the count in issue is upheld."

Counsel for appellant contend that the count in issue "contemplates a structure having a housing, *independent of the reflecting unit,* for receiving a reflector button *whether of the mounted or unmounted type,* which housing has integral ear portions adapted to be pivotally joined to similar ear portions of other similar struc-

tures. Hershman does not disclose 'housings' with 'oppositely disposed laterally extending ear portions on each housing' within the meaning of the Count." (Italics ours.)

Counsel for appellant also contend that the term "reflector ·button" or "reflector unit" is understood in the art here involved to mean either a mounted or an unmounted button, and that, therefore, in properly interpreting the involved count "it cannot be held that the metal casing of the mounted type of button is the 'housing' of the Count. *The 'housings' called for in the Count are housings for receiving either mounted or unmounted buttons including their casings, as shown* in Searight's drawing. [Searight was once a party to the interference, and counsel for appellant contend that the count originated in Searight's application.] *The housings are separate and apart from the metal casings described and shown in the Hershman application.* Hershman discloses no other elements that house his units and cannot therefore make the claim." (Italics ours.)

It is further contended by counsel that figures 11 and 13 in appellee's application on which the board relied in its decision do not disclose the invention defined in the appealed count, because, it is said, appellee's description in his specification shows clearly that there are no "means joining said housings together through said ear portions," as required by the count.

Relative to figures 10 to 13, inclusive, in his application, appellee states in his specification that—

"In the type of chain illustrated in Figs. 10 to 13 inclusive, *the reflecting units 13,* instead of being mounted in the middle of the links, are mounted at the points where adjacent links are connected and, in fact, *serve instead of the rivets 12 as the interconnection between adjacent links.* To this end, *each reflecting unit comprises a body* 35 *and an enclosing shell* 36, the rear end of the body being provided with a projecting stud 37 and the opposite end with an outwardly extending annular flange 38. The front side bars 39 of the chain are clamped between the flange 38 and the front end of the shell 36, while the side bars 40 on the rear side of the chain are clamped between the base of the casing 36 and a nut 41 on the stud 37.

\* \* \* \* \* \*

"The chain shown in Figs. 10 to 13 has the advantage that the rivets, as separate parts, may be eliminated, their place being taken by the reflecting units. In addition, by tightening the nuts 41 the side bars of adjacent links are clamped together and the chain held in a definite configuration."

It is also stated in appellee's specification, among other things, that "it is my object to produce a warning signal which will embody a plurality of light-reflecting units, each comprising a lens and reflector," and that—

"The chain shown in Figs. 1 to 4, 8 and 9 comprises a plurality of links each composed of a pair of spaced side bars 10 and 11, adjacent links being secured together by means of shouldered rivets 12, all in a general way similar to the construction of power transmission chain. In each link of the chain thus formed there is mounted a *reflecting unit 13. Details of the reflecting unit are not illustrated, as such devices are on the market and well known.*

*"In general, they comprise a casing having a lens in one end and a light reflector inside. While I prefer this general type of light-reflecting unit, I do not limit myself to it.* In the chain shown in Figs. 3 and 4, the side bars 10 and 11 are of a generally square shape, the rivets 12 passing through the holes in opposite corners of the squares. On one side of the chain, shown in Figs. 3 and 4 as the rear side, the laterally projecting corners of the side bars are provided with holes 14 for the passage of nails or screws by means of which the chain can be secured in any desired position against a plane-faced support 16.

"In Fig 7 I have indicated side bars or spacing members 31 different in shape from the square side bars in Fig 3 and having the advantage that they permit the chain to be bent at a sharper angle. Instead of being square, the side-bars or spacing members 31 of Fig 7 are generally circular, and each of them is provided with a series of spacing ears 31', one pair of opposite ears being used to receive the rivets 12 and the other pair being provided with holes 14 for the passage of screws or nails by which the chain may be held in place." (Italics ours.)

For the purpose of clarity, we reproduce figures 3 and 7 of the drawings in appellee's application.

ed ear portions on each housing, means joining said housings together through said ear portions and *reflector buttons,"*

*Fig. 3.*

*Fig. 7.*

Counsel for appellant argue that the invention is not disclosed in figures 3 and 4 in appellee's application, because those figures show only "spaced bars between which are positioned mounted or encased reflecting units and *do not disclose housings with ear portions for receiving such units."* (Italics ours.)

We are unable to concur in the views expressed by counsel for appellant.

It clearly appears from appellee's application that he was fully aware of the fact that there were reflecting units on the market comprising a casing having a lens in one end and a light reflector inside, and that he preferred that type of light reflecting unit. Appellee stated in his application, however, that he did not intend to be limited to such a unit. Obviously, he did not intend to exclude from his application a reflector button assembly which included a reflecting unit comprising a "casing having a lens in one end and a light reflector inside," any more than he intended to exclude a reflecting unit which had no casing.

It will be observed that the count calls for a "reflector button assembly comprising a plurality of *reflector button housings,* oppositely disposed laterally extend-

not *encased* reflector buttons, "positioned within said housings." (Italics ours.)

Counsel for appellant refer in their brief to a reflector button without a casing as an "unmounted button," and one with a casing as a "mounted button," and it is apparently argued by them that the count calls for a reflector button assembly which includes either an "unmounted" or a "mounted" reflector button. It is perfectly apparent from a mere reading of the count that it cannot properly be so construed. Furthermore, if the count should be construed as requiring reflecting units comprising a lens and a reflector in a casing, and, in addition thereto, housings for such reflecting units, appellant himself could not make the count.

We quote from appellant's specification:

"This invention is directed to new and useful improvements in Signal Button Mountings. The button or *reflecting units* for which *these mountings* are provided are of the type in common *use today generally comprising a unit of glass formed with a curved objective lens and an oppositely disposed curved surface covered with a reflecting material * * *.*

\* \* \* \* \* \*

"The primary object of this invention is to provide *mountings for such buttons*

*that are pivotally joined together in the form of a chain* so that the desired characters can be easily formed without specifically placing each individual unit.

"Another object of this invention is to provide such a *series of mountings* that are of simple and cheap construction.

"Still a further object of this invention is to provide such a series of *pivotally attached mountings* having convenient means for fastening to a signboard in the desired position." (Italics ours.)

Furthermore, in the brief of counsel for appellant it is stated that "Mills' [appellant's] disclosure (R.8A) [all of appellant's drawings appear on page 8A of the record] shows an 'unmounted' button 11 comprising the objective lens 12 and the reflecting surface 13 *with no metal casing.*" (Italics ours.)

We are unable to find any disclosure in appellant's application of a "reflector button assembly" having housings in addition to the metal casings or housings in which so-called reflector buttons are encased. In other words, appellant's application does not disclose housings for so-called "mounted buttons."

It is contended by counsel for appellant that the language of the count is ambiguous, and that, therefore, it must be interpreted in the light of the Searight application where, it is claimed, the count originated.

It is not clear to us from the record that the count originated in the Searight application. Even if it be assumed, however, that it did, it is sufficient to say that the Searight application is not before us, the record containing only figures 1 to 5, inclusive, thereof.

■■ We are of opinion, however, that the language of the count is plain and unambiguous; that the count calls for nothing more than housings in which *reflector buttons* are positioned *(mounted* reflector buttons are not mentioned in the count), the housings having "oppositely disposed laterally extending ear portions" thereon and "means joining said housings together through said ear portions"; that the invention defined in the involved count is clearly disclosed in the specification and in figure 3 of appellee's application; and that it is also disclosed in appellee's figure 7,

except that the reflector buttons are not shown positioned in the housings.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.